# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

VICKY M.,

                              Plaintiff,

          - v -                                           Civ. No. 8:17-CV-521
                                                                  (DJS)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

**APPEARANCES:**                              **OF COUNSEL:**

SCHNEIDER & PALCSIK                           MARK A. SCHNEIDER, ESQ.
Attorney for Plaintiff
57 Court Street
Plattsburgh, New York 12901

SOCIAL SECURITY ADMINISTRATION                JOANNE J. PENGELLY, ESQ.
Office of Regional General Counsel            Special Assistant U.S. Attorney
Attorney for Defendant
26 Federal Plaza
Room 3904
New York, New York 10278

**DANIEL J. STEWART**
**United States Magistrate Judge**

## <u>MEMORANDUM-DECISION and ORDER</u>[1]

Currently before the Court, in this Social Security action filed by Vicky M.

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. § 405(g) are Plaintiff's Motion for Judgment on the

---

[1] Upon Plaintiff's consent, the United States's general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 5 & General Order 18.

Pleadings and Defendant's Motion for Judgment on the Pleadings. Dkt. Nos. 11 and 14. For the reasons set forth below, Plaintiff's Motion is denied and Defendant's Motion is granted. The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

# I. RELEVANT BACKGROUND

## A. Factual Background

Plaintiff was born in 1968, making her 44 years old at the alleged onset date. Dkt. No. 8, Admin. Tr. ("Tr.") at p. 117. Plaintiff reported completing the twelfth grade. Tr. at p. 132. Plaintiff has past work as a billing typist (as classified by the vocational expert ("VE") at the administrative hearing). Tr. at pp. 48 & 132. At the initial level, Plaintiff alleged disability due to bipolar II disorder and depression. Tr. at p. 131.

## B. Procedural History

Plaintiff applied for a period of disability and disability insurance benefits on March 13, 2014, alleging disability beginning October 11, 2013. Plaintiff's application was initially denied on June 17, 2014, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at a hearing before ALJ Brian LeCours on October 26, 2015. On November 19, 2015, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. Tr. at pp. 14-28. On March 21, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. at p. 1.

## C. The ALJ's Decision

The ALJ made the following seven findings of fact and conclusions of law.  Tr. at pp. 10-19.  First, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2018.  Tr. at p. 10.  Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 11, 2013, the alleged onset date. *Id*.  Third, the ALJ found that Plaintiff's alleged impairments including affective disorder, anxiety disorder, and trichotillomania are severe impairments.  *Id*.  Fourth, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings").  Tr. at pp. 11-12.  Specifically, the ALJ considered the criteria of Listings 12.04 (affective disorders) and 12.06 (anxiety related disorders).  *Id*.  Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> she can perform work consisting of unskilled tasks, work, requiring little or no judgment to do simple duties that can be learned on the job in a short period of time; can have minimal, defined as brief and superficial on a less than occasional basis, interaction with the general public; and can have occasional interaction with coworkers and supervisors.

Tr. at p. 12.  Sixth, the ALJ found that Plaintiff is unable to perform any past relevant work.  Tr. at p. 17.  Seventh, the ALJ found that there are jobs existing in significant numbers in the national economy that Plaintiff can perform.  Tr. at p. 18.  The ALJ therefore concluded that Plaintiff is not disabled.

## D. The Parties' Briefings on Their Cross-Motions

### *1. Plaintiff's Motion for Judgment on the Pleadings*

Plaintiff makes six arguments in support of her Motion for Judgment on the Pleadings. Dkt. No. 11, Pl.'s Mem. of Law at pp. 10-30. First, Plaintiff argues that the ALJ erred by not giving sufficient weight to the findings and opinions of her treating sources. *Id*. at pp. 10-17. Specifically, Plaintiff argues that her treatment records indicate she suffered from debilitating depression and that her providers agreed she had severe challenges in self-care, activities of daily living, and self-direction, and moderate challenges in social functioning and economic self-sufficiency. *Id*. at pp. 16-17. Plaintiff also argues that the ALJ erred by giving controlling weight to the unsupported opinion of one-time consultative examiner Carly Melcher, Psy.D. *Id*. at p. 16. Plaintiff points out that Dr. Melcher is a psychologist (not a psychiatrist) who did not review any of Plaintiff's medical records and that Dr. Melcher noted Plaintiff made a mistake on serial threes, but still found only mild limitations in concentration and attention. *Id*.

Second, Plaintiff argues that she is disabled by her depression pursuant to Listing 12.04. *Id*. at pp. 17-20. Specifically, Plaintiff argues that the findings of her treatment providers and her reports (including that she spends most of the day in bed because of depression and is often crying) correlate with marked restriction of activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence or pace. *Id*. at p. 20. Plaintiff also argues that the medical reports indicate repeated episodes of decompensation of extended duration. *Id*.

Third, Plaintiff argues that she is disabled by her combination of depression, anxiety, and trichotillomania. *Id*. at pp. 20-22. Specifically, Plaintiff argues that her anxiety compounds the effects of her depression, further limiting her ability to work. *Id*. at p. 21. Plaintiff also argues that trichotillomania is a symptom of her depression and anxiety that is disabling in combination with her other impairments, causing her significant distress or impairment in social, occupational, and other important areas of functioning. *Id*. at p. 22.

Fourth, Plaintiff argues that the ALJ erred by not crediting her testimony. *Id*. at pp. 22-26. Specifically, Plaintiff argues that the ALJ improperly discredited her testimony for not obtaining more treatment when, in fact, she has a long record of regular medical treatment with both therapy and medications. *Id*. at p. 26. Plaintiff also argues that it is uncontroverted that she had a good work record until she had to leave work because of her disabilities which should have bolstered her credibility. *Id*. at p. 25.

Fifth, Plaintiff argues that the ALJ erred by not giving sufficient weight to the letter from her former employer Stephanie Brown. *Id*. at pp. 26-28. Specifically, Plaintiff argues that the ALJ should have given much more weight to Ms. Brown's observations and opinion, as a disinterested witness when determining Plaintiff's credibility and the issue of disability. *Id*. at p. 28. Plaintiff argues that the ALJ erred in baldly rejecting Ms. Brown's letter and that he could have communicated with Ms. Brown if he needed further information. *Id*.

Sixth, Plaintiff argues that the Commissioner did not meet her burden to show that Plaintiff was able to perform work at Step Five. *Id*. at pp. 28-30. Specifically, Plaintiff argues that the ALJ erred by not crediting further limitations which were included in

hypothetical questions posed to the VE at the administrative hearing and by not including them in the RFC; the VE indicated that such limitations (including being off-task 20 percent of the time, missing work due to symptom exacerbation, and being able to meet deadlines only occasionally) would preclude all work. *Id*. at pp. 29-30.

In conclusion, Plaintiff argues that this Court should determine that she is disabled and remand for payment of benefits. *Id*. at p. 30.

### 2. Defendant's Motion for Judgment on the Pleadings

Defendant makes five arguments in support of the Motion for Judgment on the Pleadings. Dkt. No. 14, Def.'s Mem. of Law at pp. 5-15. First, Defendant argues that the ALJ properly found that Plaintiff's impairments did not meet the requirements of a listed impairment. *Id*. at pp. 5-10. Specifically, Defendant argues that substantial evidence supports the ALJ's finding that Plaintiff had only moderate limitations in activities of daily living, social functioning, and concentration, persistence or pace and no episodes of decompensation of extended duration. *Id*. at pp. 6-10. Defendant argues that the ALJ's findings are supported by the opinions of consultative examiner Dr. Melcher and non-examining consultant T. Bruni, Ph.D. *Id*. at pp. 8-10.

Second, Defendant argues that the ALJ's RFC determination is supported by substantial evidence. *Id*. at pp. 10-13. Specifically, Defendant argues that the ALJ properly afforded great weight to Dr. Melcher's opinion and that Dr. Melcher's opinion constitutes substantial evidence in support of the ALJ's RFC determination. *Id*. at pp. 10-11. Defendant also argues that the ALJ reasonably afforded great weight to Dr. Bruni's opinion, which is

consistent with Dr. Melcher's opinion. *Id*. at pp. 11-12. Defendant points out that the ALJ afforded "great" but not "controlling" weight to Dr. Melcher's opinion and that, as the ALJ discussed, the treatment notes cited by Plaintiff showed generally benign mental status evaluations and a greater functional capacity than that alleged by Plaintiff. *Id*. at p. 12. Defendant also notes that the ALJ viewed Plaintiff's partially credible reports in the best light possible for Plaintiff and afforded her greater limitations than those opined by Drs. Melcher and Bruni and those suggested by the objective evidence. *Id*. at pp. 12-13.

Third, Defendant argues that the ALJ properly assessed Plaintiff's credibility. *Id*. at pp. 13-14. Specifically, Defendant argues that, while the ALJ considered Plaintiff's stated reasons for not obtaining more treatment, an ALJ may consider a claimant's conservative treatment as additional evidence supporting his determination. *Id*. at p. 13. Defendant points out that Plaintiff was told by her providers to increase therapy or do work outside therapy as she was making little or no progress attending only once a month. *Id*. Defendant also argues that the ALJ considered Plaintiff's work history, but also considered other factors including improvement in her mental status, her improved Global Assessment of Functioning ("GAF") scores, her treatment, and her activities of daily living. *Id*. Defendant notes that the ALJ explained, while Plaintiff had a strong work history, she also had a comparatively weak treatment history with no inpatient stays and generally benign mental status examination findings. *Id*. at pp. 13-14.

Defendant also argues that the ALJ satisfied his responsibility to consider non-medical sources in assessing Plaintiff's credibility and made a reasoned decision to afford little

*-7-*

consideration to Ms. Brown's letter. *Id*. at p. 14. Specifically, Defendant notes that the ALJ explained that Ms. Brown had no basis to determine Plaintiff's ability to perform other work and Plaintiff's treatment history and mental status examinations suggested less severe limitations than those indicated by Ms. Brown. *Id*. Defendant argues that the ALJ had no responsibility to recontact Ms. Brown as he had sufficient evidence (including treatment notes, reports from Drs. Melcher and Bruni, and Plaintiff's own statements) when determining Plaintiff's RFC. *Id*.

Fourth, Defendant argues that the ALJ properly concluded Plaintiff could do other work in the national economy. *Id*. at pp. 14-15. Specifically, Defendant argues that the ALJ followed the correct legal standard in determining Plaintiff's RFC and that the hypothetical question posed to the VE matched the RFC as determined by the ALJ, rendering the ALJ's reliance on the vocational testimony appropriate. *Id*.

Fifth, Defendant argues that reversal for payment of benefits is not warranted given that the ALJ's decision is supported by substantial evidence and remand for the issues raised by Plaintiff would not change the outcome. *Id*. at p. 15.

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by

substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de*

*novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520 & 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d

146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. Whether Substantial Evidence Supports the ALJ's Findings Regarding Plaintiff's Impairments

"Plaintiff has the burden of proof at step three to show that her impairments meet or medically equal a Listing." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009) (citing *Naegele v. Barnhart*, 433 F. Supp. 2d 319, 324 (W.D.N.Y. 2006)). "To meet a Listing, Plaintiff must show that her medically determinable impairment satisfies all of the specified criteria in a Listing." *Rockwood v. Astrue*, 614 F. Supp. 2d at 272 (citing 20 C.F.R. § 404.1525(d)). "If a claimant's impairment 'manifests only some of those criteria, no matter how severely,' such impairment does not qualify." *Id.* (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). Additionally, a court may be able to uphold an ALJ's finding that a claimant does not meet a Listing even where the decision lacks an express rationale for that finding if the determination is supported by substantial evidence. *Id.* at 273 (citing *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982)).

Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment and specifically considered Listings 12.04 and 12.06. Tr. at p. 11. Plaintiff argues that she meets or equals Listing 12.04 and that she is disabled by her combination of depression, anxiety,

and trichotillomania. Pl.'s Mem. of Law at pp. 19-24. The Court finds these arguments unpersuasive for the following reasons.

"To meet Listing 12.04, a claimant must satisfy the diagnostic description in the introductory paragraph of 12.04, and meet the additional requirements of § 12.04(A) and (B), or § 12.04(C)." *Green v. Comm'r of Soc. Sec.*, 2016 WL 1020859, at *5 (N.D.N.Y. Mar. 14, 2016) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.00(A) & 12.04). This requires a showing of marked restrictions or difficulties. 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.04. Plaintiff has failed to establish that the ALJ's conclusion that she does not have marked restriction of daily activities, social functioning, or concentration, persistence or pace or that she has not experienced repeated episodes of decompensation of extended duration was not supported by substantial evidence.

When assessing Plaintiff's impairments, the ALJ found that she has moderate restriction of activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence or pace, and no episodes of decompensation of extended duration. Tr. at pp. 11-12. In so doing, the ALJ considered Plaintiff's reports, her treatment history (noting her generally benign mental status notes and GAF scores after the first few months of the alleged period of disability), and the two medical source statements of record and adequately explained the reasoning for his findings. *Id.*

For example, the ALJ noted that Plaintiff's credibility regarding her daily activities was undermined by a weak treatment history and her contradictory reports to Dr. Melcher that she could travel in public, drive, shop, manage money, clean, cook, and tend to her own

personal care. Tr. at p. 11. When addressing social functioning, the ALJ noted infrequent therapy without indication of combative behavior and Plaintiff's consistent presentation with a cooperative attitude and adequate socialization skills. *Id*. When addressing concentration, persistence, and pace, the ALJ noted that complaints of memory and attention deficits were rarely raised in treatment notes and that the limited mental status evaluations from treating sources consistently recorded intact or mildly restricted attention, concentration, and memory. *Id*. Finally, the ALJ noted that Plaintiff's only emergency care for mental health occurred in September 2012, one year prior to her alleged onset date. Tr. at pp. 12 & 242-67. These conclusions are amply supported in the record.

To the extent Plaintiff's arguments ask the Court to do so, I decline the invitation to reweigh the evidence before the ALJ. *Warren v. Comm'r of Soc. Sec.*, 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing . . . nor will it determine whether [the applicant] actually was disabled. [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'"), *report and recommendation adopted*, 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016) (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996)); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

For these reasons, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of a listed impairment.

## B. Whether Substantial Evidence Supports the ALJ's Consideration of the Opinion Evidence and Plaintiff's RFC

RFC is defined as "'what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Id.* (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012), *report and recommendation adopted,* 2013 WL 1180864 (N.D.N.Y. Mar. 20, 2013) (quoting Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *8). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability. 20 C.F.R. § 404.1513a; *see also Frey ex rel. A.O. v. Astrue*, 485 Fed. Appx. 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6).

Although the claimant has the general burden of proving that he or she has a disability within the meaning of the Social Security Act, "'the ALJ generally has an affirmative obligation to develop the administrative record'" due to the non-adversarial nature of a hearing on disability benefits. *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting *Melville*, 198 F.3d at 52; citing *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002), *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004), *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)). "'It is the ALJ's duty to investigate and develop the facts and develop the arguments

both for and against the granting of benefits.'" *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009)).

### 1. The ALJ's Analysis of the Medical and Opinion Evidence

When determining Plaintiff's RFC, the ALJ summarized Plaintiff's testimony and her treatment history, a letter from Plaintiff's former employer Ms. Brown, and the two medical opinions of record from Drs. Melcher and Bruni. Tr. at pp. 12-18.

Plaintiff underwent a consultative psychiatric examination by Dr. Melcher in May 2014. Tr. at pp. 217-22. On examination, Plaintiff was cooperative and related adequately and she was casually dressed and well groomed; she had normal posture and motor behavior, appropriate eye contact, fluent and clear speech, adequate expressive and receptive language, coherent and goal-directed thought process, depressed and tearful affect, dysthymic mood, mildly impaired attention and concentration and recent and remote memory skills due to emotional distress, average cognitive functioning, fair-to-poor insight, and fair judgment. Tr. at pp. 218-19. Plaintiff reported that she was able to dress, bathe and groom herself, cook and prepare food, clean, do laundry, shop if she had to, drive, and take public transportation. Tr. at p. 219. She reported few friendships and described her social life as poor and her family relationships as fair. Tr. at pp. 219-20. She reported spending most of her day in bed and watching TV at night. Tr. at p. 220.

Dr. Melcher diagnosed major depressive disorder (recurrent), generalized anxiety disorder, and the need to rule out posttraumatic stress disorder. Tr. at p. 220. She indicated a fair-to-guarded prognosis given Plaintiff's symptoms and level of motivation. *Id*. She

noted that Plaintiff would need assistance to manage funds due to her depression symptoms and level of insight. *Id*. Dr. Melcher opined that Plaintiff is able to follow and understand simple directions and instructions and perform simple tasks independently. *Id*. She also opined that Plaintiff has mild limitations maintaining attention and concentration, learning new tasks, performing complex tasks, and making appropriate decisions; mild-to-moderate limitations maintaining a regular schedule and relating adequately with others; and a moderate limitation appropriately dealing with stress. *Id*. Dr. Melcher indicated that Plaintiff's difficulties are caused by depression and anxiety and that the results of the examination appeared to be consistent with psychiatric problems, but in itself, did not appear to be significant enough to interfere with Plaintiff's ability to function on a daily basis. Tr. at p. 220.

As part of the initial determination in June 2014, non-examining consultant Dr. Bruni opined that Plaintiff has mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation of extended duration. Tr. at p. 58. Dr. Bruni also opined that Plaintiff is able to understand and remember simple instructions and procedures; she is able to sustain a normal workday and work week, but, due to limitations in sustained concentration and persistence, would benefit from a setting with minimal distractions; she exhibits difficulty with social interactions and would benefit from a work setting with limited contact with coworkers and the public, but can appropriately engage in

basic interactions to meet work-related needs; and she exhibits some difficulty with adaptation but is able to cope with basic changes and make routine decisions.  Tr. at p. 61.

In October 2015, former employer Ms. Brown provided a letter indicating that Plaintiff was a very good employee for many years until she started having nervous breakdowns at work.  Tr. at p. 194.  Ms. Brown indicated that she tried to accommodate Plaintiff by making her job less stressful, but ultimately Plaintiff could not function at work because she cried and had to go home on almost a daily basis.  *Id.*  Ms. Brown let her keep working because she knew Plaintiff was suffering from depression, but finally Plaintiff's doctor took her out of work and she received New York State disability for six months.  *Id.*  Ms. Brown indicated that, at the end of Plaintiff's employment, she was unable to function in a work setting; Ms. Brown also indicated that she does not think Plaintiff can do any work with her mental illness.  *Id.*

The ALJ afforded great weight to the "mutually consistent opinions" from Drs. Bruni and Melcher, noting that he ultimately found greater limitations than opined by the two sources and afforded "extreme deference to the claimant's partially credible reports."  Tr. at p. 17.  The ALJ afforded little consideration to Ms. Brown's letter, identifying it as an opinion from a non-medical source who only saw Plaintiff in the capacity of her former semi-skilled work and had no basis to determine her capacity for other work, particularly less stressful and more simple work tasks.  Tr. at p. 13.  The ALJ also indicated that, although Ms. Brown noted that Plaintiff was tearful during workdays and that Plaintiff had also presented as tearful at treatment, her mental status evaluations suggested less severe

*-18-*

limitations and her treatment history was not consistent with the alleged severity of symptoms and work difficulties. *Id.*

### 2. The Court's Analysis

Plaintiff argues that the ALJ erred (a) in affording "controlling weight" to Dr. Melcher's opinion, (b) by not giving sufficient weight to the findings and opinions of her treating sources, and (c) in not giving sufficient weight Ms. Brown's letter. Pl.'s Mem. of Law at pp. 10-17 & 26-28. Plaintiff also appears to argue that the ALJ could have communicated with Ms. Brown if he needed further information, implying a possible failure by the ALJ to properly develop the record. *Id.* at p. 28. The Court disagrees.

First, the ALJ's decision indicates that he properly considered the opinion evidence in the record. Factually, the ALJ did not afford controlling weight to Dr. Melcher's opinion, but rather afforded it great weight along with the opinion from Dr. Bruni. Tr. at p. 17. The ALJ was entitled to rely on these opinions from qualified experts in the field of social security disability. 20 C.F.R. § 404.1513a; *Frey ex. rel. A.O. v. Astrue*, 485 Fed. Appx. at 487; *Little v. Colvin*, 2015 WL 1399586, at *9. Regarding Plaintiff's contention that Dr. Melcher's opinion is entitled to less weight because she did not review Plaintiff's records, there is also no legal requirement that opinion sources have access to the complete record, including a claimant's medical records. *See Stottlar v. Colvin*, 2017 WL 972108, at *7 (N.D.N.Y. Mar. 10, 2017) (noting that "a medical consultant's failure to consider the complete medical record does not necessarily compel rejection of the medical consultant's opinions 'or the ALJ's finding relying thereon'"); *see also* 20 C.F.R. § 404.1519n(c) (which

does not indicate that reviewing a claimant's medical records is a requirement for a complete consultative examination). The ALJ also supported his RFC determination and the weight afforded to these opinions by explaining that he found greater limitations than those opined by the two sources regarding social limitations and the ability to perform simple tasks. Tr. at p. 17. For these reasons, the Court finds that the ALJ properly relied upon the two opinions of record and supported his analysis of those opinions with sufficient explanation.

Second, the ALJ's decision indicates that he properly reviewed and considered the medical evidence, including treatment notes from Plaintiff's treating providers. Tr. at pp. 11-16. The ALJ explicitly addressed the treatment findings, noting that a treating source had not provided a medical source statement and that early treatment notes recorded Plaintiff's subjective complaints but lacked clinical abnormalities aside from tearfulness and paucity of speech. Tr. at p. 16.

The ALJ also addressed the suggestions of Plaintiff's representative. *Id.* In response to Plaintiff's representative's suggestion that the treatment notes alone supported a finding that her impairments met requirements of a listed impairment, the ALJ noted that this was not substantiated especially given the lack of any regular insight into Plaintiff's symptoms and limitations aside from her own subjective reports and references to her tearfulness and early paucity of speech. *Id.* In response to Plaintiff's representative's suggestion that the examination notes and opinion of the consultative examiner should be disregarded because they conflicted with treatment notes, the ALJ noted that the opinion was actually consistent with the few mental status evaluations present in the treatment notes. *Id.* For these reasons,

the Court finds that the ALJ properly considered the medical evidence of record, including the treatment notes and findings from Plaintiff's treatment providers.

Third, the ALJ's decision indicates that he properly considered the third-party opinion found in Ms. Brown's letter. The ALJ adequately explained that he afforded little consideration to this opinion from a non-medical source, that Ms. Brown had no basis to determine Plaintiff's capacity for other work, and that Ms. Brown only noted that Plaintiff was tearful during workdays. Tr. at p. 13. Further, "opinions from other sources are not medical opinions that are entitled to any particular weight under the regulations." *Atkinson v. Comm'r of Soc. Sec.*, 2017 WL 1288723, at *5 (N.D.N.Y. Apr. 6, 2017) (citing 20 C.F.R. §§ 416.1913(a), 416.927(b)). For these reasons, the Court finds that the ALJ properly considered Ms. Brown's letter and adequately explained his reasoning in affording it little weight.

Fourth, the ALJ's decision does not indicate that he improperly failed to recontact Ms. Brown. While Plaintiff appears to argue that the ALJ could have communicated with Ms. Brown if he needed further information, Pl.'s Mem. of Law at p. 28, there is no indication in the record that the ALJ needed further information or clarification from Ms. Brown. "Generally, additional evidence or clarification is sought when there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques." *Janes v. Colvin*, 2017 WL 972110, at *4 (N.D.N.Y. Mar. 10, 2017), *aff'd*, 710 Fed. Appx. 33 (2d Cir. 2018) (citing 20 C.F.R. § 404.1520b; *Rosa v. Callahan*, 168 F.3d 72,

80 (2d Cir. 1999); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998)).  Neither Ms. Brown's letter nor the ALJ's analysis of it indicates that it lacked any information necessary to the ALJ's decision or was otherwise ambiguous to the point of requiring further explanation. The Court therefore finds that the ALJ did not err in not recontacting Ms. Brown.

For the above reasons, the Court finds that the ALJ's consideration of the medical and opinion evidence and Plaintiff's RFC is supported by substantial evidence.

## C. Whether Substantial Evidence Supports the ALJ's Credibility Determination

In determining whether a claimant is disabled, the ALJ must also make a determination as to the credibility of the claimant's allegations.  "'An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)).  The Second Circuit recognizes that "'[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and that, "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'" *Schlichting v. Astrue*, 11 F. Supp. 3d at 206 (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d at 642; *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)).  The ALJ has

the benefit of directly observing a claimant's demeanor and "other indicia of credibility" and so the ALJ's credibility assessment is generally entitled to deference. *Weather v. Astrue*, 32 F. Supp. 3d 363, 381 (N.D.N.Y. 2012) (citing *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999)).

Here, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. Tr. at p. 13. Plaintiff argues that the ALJ erred in his consideration of her treatment and work history. Pl.'s Mem. of Law at pp. 22-26. The Court finds, however, that the ALJ's determination was appropriately supported by the record.

First, the ALJ summarized Plaintiff's testimony and medical treatment as well as the opinion evidence of record and considered this evidence based on the requirements of 20 C.F.R. § 404.1529 and SSR 96-7p (superseded by SSR 16-3p). Tr. at pp. 12-17; SSR 96-7, 1996 WL 374186, at *3. The ALJ explicitly stated that Plaintiff's testimony of disabling symptoms and limitations was not fully credible because it was not supported by the medical evidence of record, which showed that, while there were limitations, they did not preclude full-time work. Tr. at p. 13.

Second, the ALJ's analysis indicates that he properly considered Plaintiff's work history and treatment when assessing her credibility. The ALJ specifically noted that Plaintiff's representative argued that her strong work history should bolster her credibility, but that this could not overcome her comparatively weak treatment history with no inpatient stays and generally benign mental status abnormalities. Tr. at pp. 13-14.

The ALJ's analysis also offers multiple examples of the inconsistencies he found between Plaintiff's treatment history and her allegations of disabling limitations. The ALJ noted that Plaintiff treated only monthly and the record showed only one psychiatric hospital visit, which occurred prior to the alleged onset date and did not result in an inpatient stay. Tr. at pp. 13-14. The ALJ also indicated that the mental health treatment notes were limited and primarily recorded Plaintiff's subjective complaints and tearful nature. Tr. at pp. 14 & 16. The ALJ noted that, when mental status evaluations were performed, they suggested greater functional capacity than alleged by Plaintiff. Tr. at p. 16. Notably, the ALJ pointed out that Plaintiff inquired about disability as opposed to returning to work despite reporting significant improvements in crying as of October 31, 2013. Tr. at pp. 14 & 202-03. The Court's review of the evidence indicates that treating provider Stanley Poreba, M.D., did note on November 27, 2013, that "patient may have already decided her projected outcomes today mentioning for the first time that she is considering going out on disability." Tr. at p. 202.

The ALJ also stated that, while therapy summaries from February 2014 noted GAF scores indicating moderate and serious symptoms and limitations in social or occupational functioning, such scores were undermined by subsequent improved mental status evaluation notes in March and April 2014 and improved GAF scores in the summer of 2014. Tr. at pp. 14-15, 195-216, & 223-41. The ALJ noted Plaintiff's diagnosis of trichotillomania in July 2014 and a lack of mental status evaluations in subsequent treatment notes, leaving little evidence with which to substantiate Plaintiff's allegations. Tr. at p. 15. The ALJ also noted treatment notes indicating Plaintiff had purchased a recommended workbook but did not use

it to lessen her reported symptoms, she subsequently remained noncompliant with her workbook and resisted changes to medication, and she did not pursue recommendations for increased therapy after not reporting any improvement while attending treatment only once per month. Tr. at pp. 15 & 268-334. The ALJ pointed out that clinical notes indicated GAF scores of 55 and 56 between July 2014 and September 2015, suggesting that Plaintiff's impairments resulted in only moderate symptoms and limitations in social or occupational functioning and significantly outweighing several earlier GAF scores of 50 which were based substantially on Plaintiff's subjective reports. *Id.*

Finally, the ALJ also noted inconsistencies between Plaintiff's testimony/reports to her treating sources (including that she tends to no chores and does not leave her room except to take her daughter to school) and her reports to consultative examiner Dr. Melcher. Tr. at p. 16. The ALJ noted that Plaintiff reported to Dr. Melcher that she tended to all personal care, cooked, prepared food, cleaned, did laundry, and could even shop if she had to, which undermined her overall credibility. *Id.* The ALJ further noted that, while Plaintiff asserted a poor social life, she reported a few friendships with fair family relationships and that Plaintiff asserted she would be able to manage money if her husband did not do it, she was able to drive, and she was even able to take public transportation. *Id.*

The reasons provided by the ALJ for his credibility determination as summarized above are supported by substantial evidence and this Court will not reweigh the evidence of record. *See Vincent v. Shalala*, 830 F. Supp. at 133 ("[I]t is not the function of the reviewing

court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d at 642).

### D. Whether Substantial Evidence Supports the ALJ's Step Five Determination

Although the claimant has the general burden to prove he has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'" *McIntyre v. Colvin*, 758 F.3d at 150 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)). "An ALJ may rely on a vocational expert's testimony regarding a hypothetical [question] as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [and]. . . [the hypothetical question] accurately reflect[s] the limitations and capabilities of the claimant involved." *McIntyre v. Colvin*, 758 F.3d at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983); citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)). "If a hypothetical question does not include all of a claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Pardee v. Astrue*, 631 F. Supp. 2d at 211 (citing *Melligan v. Chater*, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

Here, the ALJ found that Plaintiff is capable of performing jobs existing in significant numbers in the national economy including addresser, document preparer, and cleaner (housekeeping). Tr. at p. 18. Plaintiff appears to argue that the Step Five determination is

not supported by substantial evidence because the ALJ did not credit further limitations (which would have been work-preclusive) or include them in the RFC. Pl.'s Mem. of Law at pp. 28-30. As discussed above, substantial evidence supports the ALJ's consideration of the Listings, the evidence, and Plaintiff's credibility, as well as his determination of Plaintiff's RFC. The Step Five determination based upon the ALJ's findings is therefore likewise supported by substantial evidence and remand is not required on this basis.

## IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: August 28, 2018
      Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge